UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHERRY GAY P.,[1] | |
| Plaintiff, | Case No. 4:23-cv-00542-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| LELAND DUDEK, Acting Commissioner of Social Security Administration,[2] | |
| Defendant. | |

**INTRODUCTION**

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of her

application for disability and disability insurance benefits under Title II of the Social

Security Act. (Dkt. 1.) The matter is fully briefed and at issue. (Dkt. 12, 17, 18.) Having

reviewed the Complaint, the parties' memoranda, and the entire administrative record

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Leland Dudek was named Acting Commissioner of Social Security Administration on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek will be substituted as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

(AR), the Court will remand[3] the decision of the Commissioner as explained below.

## BACKGROUND

On July 27, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on May 21, 2020. (AR 17.) At the time of the alleged disability onset date, Plaintiff was 57 years of age. (AR 28.)

The application was denied initially and on reconsideration. A hearing was conducted by video on February 24, 2023, before an Administrative Law Judge (ALJ). (AR 17.)[4] After considering testimony from Plaintiff and a vocational expert (VE), the ALJ issued a written decision on May 17, 2023, finding Plaintiff had not been under a disability from May 21, 2020, through the date of the decision. (AR 17 – 30.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely appealed the Commissioner's decision to the Court on December 4, 2023. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter…a

---

[3] All parties have consented to the jurisdiction of a magistrate judge to hear and decide all matters in this proceeding. (Dkt. 7.) 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[4] The hearing was conducted with the consent of the Plaintiff via video due to the Coronavirus Pandemic of 2019. (AR 17).

judgment affirming, modifying, or reversing the decision of the Commissioner of Social

Security, with or without remanding the cause for a rehearing." The Court must uphold

the ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is

not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir.

2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This

requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*,

759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and

the evidence that does not support, the ALJ's conclusion. *Id.*

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence

presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why

"significant probative evidence has been rejected." *Id.*

## THE ALJ'S ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step

sequential inquiry[5] to determine whether a claimant is disabled within the meaning of the

Act. 20 C.F.R. §§ 404.1520 and 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114

(9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

since the alleged onset date of May 21, 2020. (AR 20.)

At step two, the ALJ found Plaintiff suffers from the following medically

determinable, severe impairments: "bilateral knee dysfunction (post-remote bilateral total

knee arthroplasty with revision in 2018), chronic obstructive pulmonary disease

(COPD)/pulmonary fibrosis, obesity, and osteoarthritis of the left shoulder." *Id*. The ALJ

found symptoms caused by Plaintiff's obstructive sleep apnea, gastroesophageal reflux

disease, left hip bursitis, non-alcoholic steatohepatitis with cystitis, mild polycythemia

vera, hand fracture, and psoriatic arthritis did not significantly limit her physical or

mental ability to perform basic work activities. (AR 21.) The ALJ found symptoms

related to Plaintiff's right-hand fracture in November 2020 did not persist for twelve

consecutive months. *Id*. The ALJ concluded also that Plaintiff's anxiety disorder did not

---

[5] *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013), sets forth the five-step review process as follows: "The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v)."

**MEMORANDUM DECISION AND ORDER - 4**

cause more than minimal limitations in her ability to perform basic mental work activities, and is therefore non-severe. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which meets or is medically equal to the severity of a listed impairment. (AR 23.)

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[6] with the following limitations:

> [Claimant can] only occasionally operate foot controls with the left lower extremity; she can only frequently balance, as defined by the Selected Characteristics of Occupations (SCO); she can only occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds; she can only occasionally stoop kneel, crouch, and crawl; she can only frequently reach overhead with the non-dominant left upper extremity; she must avoid concentrated exposure to vibration and pulmonary irritants, such as fumes, odors, dusts, and gases; and she must avoid all exposure to unguarded moving mechanical parts and unprotected heights.

(AR 24.)

The ALJ found Plaintiff capable of performing her past relevant work as a receptionist. (AR 28.) Nonetheless, at step five, the ALJ found there are other jobs that exist in the national economy that Plaintiff could perform, considering her age, education, work experience, transferable skills, and RFC, such as: reception clerk, registration clerk,

---

[6] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)

**MEMORANDUM DECISION AND ORDER - 5**

and referral clerk. (AR 28 – 29.)The ALJ therefore found Plaintiff had not been under a

disability from the alleged onset date of May 21, 2020, through the date of the decision.

(AR 30.)

## ISSUES FOR REVIEW

1.     Whether the ALJ erred at step two by finding Plaintiff's mental impairment, psoriatic arthritis, and right-hand index finger impairment to be non-severe.

2.     Whether the RFC is supported by substantial evidence where the ALJ failed to account for Plaintiff's mental limitation as part of the RFC.

## DISCUSSION

In the context of Plaintiff's argument regarding her mental impairments, she

presents two discrete questions. (Dkt. 12 at 1.) First, whether the ALJ erred at step two in

finding Plaintiff's mental impairments to be non-severe. Second, whether the ALJ erred

by not considering Plaintiff's non-severe mental impairments when assessing her RFC

prior to step four. (Dkt. 10 at 21.) Because the Court finds an adequate basis for remand

on the ground that the ALJ failed to consider Plaintiff's mental impairments when

evaluating the RFC, the Court will address this issue out of turn and will not reach

Plaintiff's alternative arguments. *See Hiler v. Astrue*, 687 F. 3d 1208, 1212 (9th Cir.

2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to

reach [Plaintiff's] alternative grounds for remand.").

## 1.     The ALJ's Evaluation of Plaintiff's Mental Impairments

As it relates to mental health disorders, step two requires the ALJ to consider a

claimant's functioning in four broad mental domains that encompass all or almost all

human thought and activity. Known as the "paragraph B" criteria, these domains include:

(i) understanding, remembering, and applying information; (ii) interacting with others;

(iii) concentrating, persisting, and maintaining pace; and (iv) adapting or

managing oneself. 20 C.F.R. § 404.1520a(b)-(c). The ALJ must rate the claimant's

degree of limitation in these areas using a five-point scale: none, mild, moderate, marked,

or extreme. 20 C.F.R. § 404.1520a(c)(4). An "extreme" limitation represents "a degree of

limitation that is incompatible with the ability to do any gainful activity," whereas

degrees of limitation rated as "none" or "mild" generally reflect a non-severe

impairment. *Id*. at § 404.1520a(c)(4)-(d)(1).

Here, the ALJ concluded at step two that Plaintiff's anxiety disorder was a

medically determinable mental impairment, but that it was non-severe because it did not

cause more than minimal limitations in her ability to perform basic mental work

activities. (AR 21.) Specifically, the ALJ found Plaintiff to have mild limitations in each

of the four mental domains. (AR 22 – 23.)

First, the ALJ found that Plaintiff has no more than a mild limitation in the

functional area of understanding, remembering, or applying information. (AR 22.) In

support of this finding, the ALJ referred to Plaintiff's function report, where she reported

the ability to care for cats, pick up around the house, handle personal care, prepare meals,

vacuum, sweep, wash dishes, perform some lawn work, drive, shop in stores, go hunting

and fishing two to three times a year, handle finances, and watch TV. (AR 22, 252-56.)

The ALJ also pointed to treatment records showing Plaintiff was able to provide

information about her health, describe her work history, follow instructions from

**MEMORANDUM DECISION AND ORDER - 7**

providers, comply with treatment, and respond to questions from providers. (AR 22.)

Plaintiff was also observed with normal cognition during an examination. (AR 22, 691.)

Second, the ALJ found that Plaintiff has a mild limitation in interacting with others. The ALJ based this finding on Plaintiff's self-reports that she had no problem getting along with others, the ability to shop in stores, and spend time with others. (AR 22, 255-57.) The ALJ also noted that evidence in the record showed Plaintiff had a good rapport with providers, was described as pleasant and cooperative, and appeared comfortable during appointments. (AR 22, 429, 691, 709, 1423, 1426, 1429, 1434.)

Third, the ALJ found Plaintiff has a mild limitation in concentrating, persisting, or maintaining pace. (AR 22.) The ALJ cited again to Plaintiff's activities set forth in her function report. (AR 22.) Further, the ALJ found the record failed to show an inability to complete testing assessing concentration and attention, and again pointed to the record finding Plaintiff to have normal cognition. (AR 22.)

Last, the ALJ found that Plaintiff has a mild limitation in the functional area of adapting or managing oneself. (AR 23.) The ALJ once again noted the activities she described in her function report and pointed to objective evidence showing Plaintiff had appropriate grooming and hygiene, got along with providers and staff, had a normal mood and affect, and no problems with temper control. (AR 23, 887, 932, 1000, 1071, 1125, 1221, 1277.)

After making the findings regarding Plaintiff's mental limitations in all four of the broad mental domains, the ALJ acknowledged that:

[T]he limitations in the "paragraph B" criteria are not a residual functional

capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 23.)

The ALJ later included largely the same analysis in the context of considering whether the state agency medical consultants' opinions are persuasive:

> State agency medical consultants found that the claimant had no severe mental impairment and only mild limitations in each of the "paragraph B" criteria (Exh. B3A, B5A). These findings are supported by a reasonable explanation. Further, the lack of significant mental health treatment, the normal examinations, and the claimant's ability to care for cats, pick up around the house, handle personal care, prepare meals, vacuum, sweep, wash dishes, perform some lawn work, drive, shop in stores, handle finances, and watch TV are reasonably consistent with the nonsevere mental findings. Therefore, the prior administrative medical findings of no severe mental impairment are persuasive.

(AR 27.)

Plaintiff argues that the ALJ erred by failing to include any mental health limitations in the RFC. Pl.'s Brief at 12 – 13. (Dkt. 12.) Citing *Craig H. v. Kijakazi*, No. 22-cv-800-AJB(LR), 2023 WL 4679342 (S.D. Cal. July 21, 2023), Plaintiff contends the ALJ is required to consider the limiting effects of her impairments – even ones that are non-severe – in formulating Plaintiff's RFC. Plaintiff faults the ALJ for failing to make a more detailed assessment of Plaintiff's mental functions in formulating her RFC, which ultimately contained no analysis of any of the mental limitations assessed in the step two analysis. *Id.* After finding that Plaintiff had mild mental limitations in each of the four

mental domains, and finding the state agency medical consultants' opinions persuasive, the Plaintiff contends the ALJ's failure to include any restrictions related to these limitations in her RFC amounts to reversible error. *Id.*

In response, Defendant insists that when an ALJ finds a plaintiff's mental impairments are non-severe and only mildly limiting at step two, the ALJ is not required to incorporate mental limitations in the RFC. Def.'s Brief at 6. (Dkt. 17.) Citing to *Woods v. Kijakazi*, 32 F. 4th 785 (9th Cir. 2022), as well as other cases decided by district courts in the Ninth Circuit, Defendant essentially argues that any mental limitations deemed non-severe need not be included in the RFC. Def.'s Brief at 6.

## 2. Applicable Law

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "RFC is what an individual can still do despite his or her limitations." *Id*. In determining a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). If a claimant has more than one impairment, the ALJ must consider the limiting effects of all impairments, including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 416.945(a)(2). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (emphasis omitted). Thus, a claimant generally cannot be prejudiced by the ALJ's failure to consider a particular impairment as severe at step two, as long as the ALJ finds that the claimant has at least one severe impairment, and still

addresses the non-severe impairment when considering the claimant's RFC. *See id.*

As noted above, at step two of the five-step disability evaluation, the ALJ must

consider the four broad functional areas of mental functioning set forth in the regulations

for evaluating mental disorders (the "paragraph B criteria). *See* 20 C.F.R. §

404.1520a(c)(3) (listing the "four broad functional areas in which [the Agency] will rate

the degree of [a claimant's] functional limitation" in evaluating mental impairments); 20

C.F.R. Part 404, Subpart P, Appendix 1. An ALJ's assessment of a claimant's limitations

under the paragraph B criteria, however, is not the same as an RFC assessment, which

requires "a more detailed assessment:"

> While similar evidence may be used in both assessments of
> Plaintiff's mental impairments, they are distinct, and
> limitations assessed in the context of the paragraph B
> assessment are not necessarily transferrable to the more
> detailed assessment required when formulating the RFC. The
> ALJ's task when assessing the RFC is not to provide an
> adequate explanation for how the RFC accommodates the
> ALJ's paragraph B's findings, but rather to perform a new,
> more detailed assessment incorporating all the relevant
> evidence.

*JW U. C. v. Comm'r Soc. Sec.*, No 2:19-CV-00090-DWC, 2019 WL 3451515, at *2

(W.D. Wash. July 31, 2019) (citing SSR 96-8p, 1996 WL 374184, at *4) (noting that the

limitations identified in the paragraph B criteria are not an RFC assessment, but are used

to rate the severity of mental impairments at steps two and three of the evaluation process

and that the mental RFC assessment used at steps four and five requires "a more detailed

assessment.").

3.      **Analysis**

After finding Plaintiff has mild limitations in each of the four broad functional

areas, the ALJ acknowledged that the limitations are not a residual functional capacity

assessment, and reflect only the degree of limitation found in the paragraph B mental

function analysis. (AR 23.) Yet, despite the ALJ's acknowledgment that a mental RFC

assessment "requires a more detailed assessment" than the one made in step two, the

ALJ's discussion of Plaintiff's RFC is devoid of any analysis of Plaintiff's mild mental

limitations. (AR 24 – 28.) *See Craig H.,* 2023 WL 4679342 at *12 (citing *Patricia C. v.*

*Saul*, Case No. 19-cv-00636-JM-JLB, 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11,

2020)). Accordingly, the Court's analysis of these mental impairment findings must be

confined to the ALJ's step two analysis, which was solely related to the Plaintiff's degree

of limitation with respect to each of the four paragraph B functional areas. *See id.* (citing

*Darren Jeffrey C. v. Kijakazi*, Case No. 3:21-cv-01012-AHG, 2022 WL 4474261, at *10

(S.D. Cal. Sept. 26, 2022) (the Court's analysis of the ALJ's assessment of the claimant's

mental limitations was confined to the ALJ's step two discussion "because the ALJ

expressly stated that his later RFC assessment 'reflects the degree of limitation [ ] found

in the paragraph B mental function analysis' at step two, and he did not discuss Plaintiff's

mental limitations elsewhere in the opinion.")). Courts within the Ninth Circuit have

found reversible error where the ALJ failed to at least consider mild mental limitations

when assessing the claimant's RFC. *Id.* (citing *Aida I. v. Saul*, No. 3:19-cv-00476-AJB-

RNB, 2020 WL 434319, at *4–5 (S.D. Cal. Jan. 28, 2020), *report and recommendation*

*adopted*, 2020 WL 1905356 (S.D. Cal. Apr. 17, 2020) (collecting cases)).

Nonetheless, Defendant contends that courts in the Ninth Circuit do not require the ALJ to incorporate non-severe mental limitations in the RFC, citing *Woods v. Kijakazi*, 32 F. 4th 785 (9th Cir. 2022). The Court finds *Woods* distinguishable. There, the ALJ assessed and evaluated the plaintiff's mental limitations at step four by addressing and rejecting a medical opinion containing certain mental limitations. *Woods*, 32 F.4th at 794). The court found that the ALJ's rejection of this medical opinion was proper. After properly rejecting the medical opinion relating to the plaintiff's mental limitations, the ALJ determined there were no mental limitations left to include in the RFC. *Woods* is consistent with the authority cited above.

While the ALJ does not necessarily need to incorporate non-severe limitations into the RFC, the ALJ must consider those limitations in the analysis underlying the formulation of the RFC. *See, e.g., Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012) (regardless of severity, the ALJ must consider non-severe mental impairments when determining RFC); *DeLuna v. O'Malley*, No. 1:23-CV-00902-HBK, 2024 WL 4133621, at *8 (E.D. Cal. Sept. 10, 2024) (no error where the ALJ expressly stated that the RFC assessment reflected the degree of limitation found in the paragraph B mental function analysis); *Kathryn A. C. v. Kijakazi*, No. 1:23-CV-00002-DCN-REP, 2024 WL 1298363, at *3 (D. Idaho Mar. 26, 2024) (finding the ALJ did not err because the ALJ not only incorporated the degree of limitation found in the Paragraph B analysis in the RFC evaluation, he also provided a factual basis for his conclusion that the evidence identified no specific mental limitations); *Tyson v. Kijakazi*, No. 1:21-CV-00688-BAM, 2023 WL 2313192, at *5 (E.D. Cal. Mar. 1, 2023) (finding no error when the ALJ expressly stated

that the RFC reflected the degree of limitation found in the Paragraph B analysis);

*Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20,

2016) (the ALJ may not rely on boilerplate language and must actually review the record

and specify reasons supported by substantial evidence for not including limitations

caused by a non-severe impairment in the RFC).

It is error, however, if the ALJ fails to include any analysis or statement of how

Plaintiff's non-severe mental impairments were factored into the RFC assessment.

*Mercado v. O'Malley*, No. 2:22-CV-02155 AC, 2024 WL 967619, at *4 (E.D. Cal. Mar.

6, 2024) (finding error where the ALJ did not consider limitations caused by non-severe

medically determinable mental impairment in the formulation of the RFC); *David Allan*

*G. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00162-DKG, 2023 WL 2479921, at *4 (D.

Idaho Mar. 10, 2023) (finding the ALJ erred by failing to include some discussion in the

written decision reflecting that she considered all of the plaintiff's medically

determinable impairments, specifically his mild mental impairments, in fashioning the

RFC).

Here, unlike in *Woods*, the ALJ did not reject the opinions of the state agency

medical consultants who opined on Plaintiff's mental impairments. (AR 27.) The ALJ's

discussion at step four analyzed whether the medical opinions finding no severe mental

impairment were persuasive, and essentially restated the analysis of the paragraph B

criteria without explaining why the limitations were not incorporated in the RFC. (AR

27.) "Simply repeating the findings included in the discussion of the paragraph B criteria,

without further explanation, is not sufficient to show that the requisite 'more detailed

**MEMORANDUM DECISION AND ORDER - 14**

assessment' was actually conducted by the ALJ." *Craig H.*, 2023 WL 4679342 at \*13.

The ALJ did not properly consider whether Plaintiff's mild limitations in the four broad functional areas, or paragraph B criteria, should be included in the RFC. Had the ALJ done so, these non-exertional limitations may have led to a more restrictive RFC; the ALJ was required to specifically assess them at step four. Remand is therefore required.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1)    The decision of the Commissioner of Social Security is REVERSED.

2)    This action shall be REMANDED to the Commissioner for further proceedings consistent with this opinion.

3)    This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

Dated: **February 25, 2025**

Candy W. Dale
United States Magistrate Judge